ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I (DJ 2025-063A)

| FEDERACIÓN PUERTORRIQUEÑA DE FÚTBOL,<br><br>Apelante,<br><br>v.<br><br>BEST GROUP INSURANCE O.D.M.; CHUBB INSURANCE AGENCY, INC.; ANGLO HOLDINGS, LLC; ANGLO-PUERTO RICAN INSURANCE CORPORATION; ANTILLES INSURANCE COMPANY; JANE DOE y COMPAÑIAS X, Y, Z,<br><br>Apelada. | TA2026AP00306 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan.<br><br>Civil núm.: SJ2024CV06135.<br><br>Sobre: daños y perjuicios. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 8 de mayo de 2026.

Nos corresponde determinar si, a la luz de la prueba presentada, la apelante, Federación Puertorriqueña de Fútbol (FPF), logró establecer el nexo causal indispensable para sostener una causa de acción de daños y perjuicios. Además, evaluaremos si de los documentos presentados y de la prueba que obra en el expediente surge una controversia real y sustancial sobre hechos materiales, que impiden la adjudicación sumaria del caso.

Por los fundamentos expuestos a continuación, **confirmamos** la sentencia emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 20 de febrero de 2026.

I

La controversia ante nuestra consideración inició luego de que el 28 de junio de 2024, la FPF instara una acción de daños y perjuicios contra

las aseguradoras apeladas del título[1]. En síntesis, la FPF adujo que las demandadas habían incumplido con sus deberes legales al no notificarle oportunamente sobre la denegatoria de cubierta con relación a la póliza de seguro DO-3672, intitulada *Management Protection Insurance Policy*, y al haber hecho expresiones que le generaron una falsa expectativa de cubierta. En particular, alegó que había actuado conforme a la presunta expectativa creada, por lo que contrató los servicios legales de Adsuar, Muñiz, Goyco, Seda & Pérez-Ochoa, P.S.C. (Adsuar), para que le representara en un pleito instado en su contra ante el foro federal. Por tanto, Adsuar compareció en el pleito federal, solicitó prórrogas y comenzó a prestar servicios legales en defensa de la FPF y de sus directivos.

La FPF señaló que la eventual denegatoria de cubierta le había ocasionado daños económicos. Entre ellos, resaltó el pago de los honorarios legales ascendentes a $138,614.10, así como daños adicionales por gastos administrativos y perjuicios extracontractuales, por los que reclamó una suma adicional de $150,000.00. Además, planteó que las apeladas debían responder de manera solidaria por los daños alegados.

En lo pertinente, tras múltiples incidencias procesales, el 4 de abril de 2025, el Tribunal de Primera Instancia emitió una *Sentencia Parcial*[2]. El tribunal determinó que las codemandadas, Chubb, BGI y Anglo incumplieron con la obligación de asegurarse que se notificara oportunamente a la FPF la carta de denegatoria de cubierta emitida por Chubb; es decir, lo notificaron en exceso del término de 90 días dispuesto en el Art. 27.162 del Código de Seguros, 26 LPRA sec. 2716b[3].

---

[1] A saber, Chubb Insurance Agency, Inc. (Chubb), como aseguradora; Best Group Insurance O.D.M. Corp. (BGI), como representante autorizado de Chubb; y, Anglo Holdings, LLC (Anglo Holdings), como la compañía matriz de las codemandadas Anglo-Puerto Rican Insurance Corporation (Anglo PR) y Antilles Insurance Company (Antilles). *Véase*, apéndice del recurso, a la entrada 1 en el *Sistema Unificado de Manejo y Administración de Casos* del Tribunal de Primera Instancia (SUMAC TPI).

[2] *Íd.*, entrada 84 SUMAC TPI.

[3] Según surge de la sentencia, Chubb emitió una carta en la que denegó la cubierta el **8 de junio de 2023**, dicha determinación no le fue notificada a la FPF oportunamente, ni por Chubb ni por BGI. No fue sino hasta el **17 enero de 2024**, que la FPF recibió copia de la carta denegatoria. *Íd.*, a la pág. 3.

En su *Sentencia Parcial*, el foro primario también determinó que subsistían ciertas controversias en cuanto: (1) la existencia de hechos que demostraran un nexo causal entre el incumplimiento de la obligación de notificar la denegatoria de cobertura dentro del término de noventa (90) días y los daños reclamados por la FPF; y, (2) el grado de especificidad de las cuantías o de los daños reclamados por FPF en su demanda[4].

Más adelante, allá para el 3 de noviembre de 2025, y culminado el descubrimiento de prueba, la FPF presentó una solicitud de sentencia sumaria[5]. En síntesis, sostuvo que, habiéndose adjudicado el incumplimiento contractual y legal de las codemandadas por no notificar oportunamente la determinación de cubierta, solo procedía la adjudicación sumaria de los daños reclamados.

Expuso que sus reclamaciones se circunscribían a dos partidas específicas: (1) el reembolso de los honorarios legales incurridos y pagados como resultado directo del incumplimiento contractual; y, (2) los ingresos y beneficios dejados de percibir. La FPF nuevamente alegó que los daños comenzaron en **mayo de 2023**, cuando Chubb, mediante sus expresiones y omisiones, indujo a la FPF a creer que la solicitud de cubierta sería aceptada o, en su defecto, notificada prontamente. Añadió que esa expectativa persistió hasta el **17 de enero de 2024**, cuando Chubb le notificó la denegatoria de la cubierta, o nueve (9) meses después de haberla solicitado.

También, la FPF alegó que tomó decisiones operacionales y administrativas basadas en la confianza legítima creada por las codemandadas. Ilustró que, como consecuencia de la conducta imputada a las codemandadas, no procuró alternativas menos onerosas de representación legal, sino que continuó defendiendo el caso federal de

---

[4] Chubb impugnó la referida sentencia parcial ante este foro apelativo mediante recurso de *certiorari*. No obstante, por tratarse de una sentencia final, un panel hermano acogió el recurso como una apelación, sin alterar el alfanumérico asignado y, posteriormente, **confirmó la sentencia parcial** mediante su *Sentencia* del 24 de julio de 2025. *Véase*, KLCE202500559.

[5] *Véase*, apéndice del recurso, entrada 137 SUMAC TPI.

forma vigorosa, mantuvo sus operaciones ordinarias y solo adoptó medidas administrativas cautelares, todo ello por confiar en la buena fe de su aseguradora.

Adujo que, una vez notificada la denegatoria de cubierta y ante la falta de respuesta de las codemandadas a sus gestiones posteriores, los daños se concretizaron y agravaron, al encontrarse obligada a asumir una deuda significativa por honorarios legales.

Finalmente, la FPF sostuvo que pagó una suma sustancial de los honorarios adeudados a su representación legal y que dichos gastos, así como las pérdidas operacionales subsiguientes, fueron consecuencia directa y exclusiva de la negligencia y el incumplimiento de las partes apeladas del título.

Por su parte, el 24 de noviembre de 2025, tanto Anglo PR como Chubb presentaron sendas oposiciones, a las cuales se unió BGI mediante moción[6]. En síntesis, arguyeron que la FPF no había presentado prueba ni argumentación alguna que estableciera el nexo causal entre los hechos adjudicados en la sentencia parcial y los daños reclamados. Sostuvieron que la FPF pretendía que el tribunal presumiera dicho nexo y adjudicara los daños automáticamente, sin demostrar cómo estos no se habrían producido de haberse notificado la denegatoria de cubierta dentro del término para ello.

Además, argumentaron que los gastos legales reclamados por la FPF no guardaban relación causal con la determinación de no cubierta, sino con el hecho independiente de haber sido demandada por un tercero en el foro federal. Añadieron que la FPF retuvo voluntariamente a su representación legal por un período prolongado posterior a la notificación de la denegatoria.

Tras que las partes presentaran sus respectivas réplicas y dúplicas, el Tribunal de Primera Instancia emitió la *Sentencia* objeto de este recurso[7].

---

[6] *Véase*, apéndice del recurso, entradas 140, 150 y 151 de SUMAC TPI.

[7] *Íd.*, entrada 170 SUMAC TPI.

El foro primario consignó cuarenta y nueve (49) determinaciones de hechos no controvertidos, declaró con lugar la moción de sentencia sumaria a favor de la parte demandada y ordenó el archivo de la demanda presentada por FPF.

Inconforme con la determinación, la FPF presentó una solicitud de reconsideración. No obstante, el 3 de marzo de 2026, el Tribunal de Primera Instancia la declaró sin lugar.

Aún inconforme, la FPF presentó su recurso de apelación y formuló los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al interpretar en perjuicio del asegurado una póliza de seguros, – contrato de adhesión – validando cláusulas ambiguas e inconsistentes, y al ignorar que la FPF tenía la obligación de defenderse y mitigar sus daños ante una demanda federal, confirmando así los tres elementos de los pleitos de daños y perjuicios contractuales.

> Erró el Tribunal de Primera Instancia al ignorar que la aseguradora le creó una expectativa de cubierta al asegurado y al interpretar que las expresiones vagas y ambiguas en un correo electrónico constituyen una reserva de derechos válida.

(Énfasis omitido).

Por su parte, el 23 de abril de 2026, Chubb, Anglo PR y Antilles presentaron sus respectivos alegatos[8].

Con el beneficio de la postura de las partes litigantes, resolvemos.

II

A

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula todo lo concerniente a la sentencia sumaria. Como es sabido, el propósito de este mecanismo procesal es disponer ágilmente de los casos en los que no estén presentes hechos materiales en controversia, que requieran la celebración de un juicio en su fondo. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 277 (2021).

---

[8] El 24 de abril de 2026, fuera del término para ello, BGI presentó un escrito mediante el cual advirtió que no presentaría alegato y nos solicitó que consideráramos los argumentos expuestos por las demás apeladas como suyos.

Para que esta proceda, debe surgir preponderantemente de la prueba que acompaña la sentencia sumaria que no existe controversia sobre hechos medulares del caso. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR, a la pág. 277. Por tanto, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una duda que permita concluir la existencia de una controversia real y sustancial sobre los hechos relevantes y pertinentes. *Íd.*

El Tribunal Supremo de Puerto Rico ha definido un hecho material como aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso. *Íd.*, a la pág. 277-278. Véase, además, *Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020), y *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Así pues, "[e]n ausencia de una controversia de hechos materiales, el tribunal dictará sentencia si procede en derecho". *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR, a la pág. 278, y *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1024 (2020).

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versen esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como es la intención, los propósitos mentales o la negligencia. *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR, a la pág. 278; *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010). No obstante, esto no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que habrán de ser considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales*. Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR, a la pág. 278*.*

Finalmente, al evaluar la procedencia de una sentencia sumaria, los tribunales revisores nos encontramos en la misma posición que el Tribunal de Primera Instancia. *Íd.*; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR, a la pág. 1025; *Meléndez González et al. v. M. Cuebas*, 193 DPR, a la pág.

115. Si los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.*, a la pág. 119. Por lo tanto, "si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria". *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR, a la pág. 278-279; *Ramos Pérez v. Univisión*, 178 DPR, a la pág. 214

B

El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar o a proveerle un beneficio específico o determinable, ante la ocurrencia de un suceso incierto pero previsto en el mismo. En este tipo de negocio, el asegurador o compañía aseguradora asume unos riesgos a cambio de una prima, de ello surge una obligación por parte de este ultimo de responder por la carga económica que recaiga sobre la parte asegurada en el caso de que ocurra el evento que se haya especificado en el contrato. *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, 385 (2009).

En lo pertinente a la controversia que atendemos, el Tribunal Supremo de Puerto Rico ha reiterado que un contrato de seguros es un contrato de adhesión por lo que debe interpretarse liberalmente a favor de la parte asegurada para así sostener la cubierta por vía de una interpretación razonable *Íd.,* a la pág. 386. No obstante, el Tribunal Supremo también ha aclarado que esta norma no tiene el efecto de obligar a los tribunales a interpretar a favor del asegurado una cláusula que claramente le da la razón al asegurador cuando su significado y alcance sea claro y libre de ambigüedad. *Íd.*, a las págs. 366 y 387.

Cónsono con lo anterior ha establecido que, si los términos, las condiciones y las exclusiones de un contrato de seguro son claros, específicos y libres de ambigüedades, se hará valer la clara voluntad de los contratantes. En ese sentido, los términos de un contrato son claros cuando "por sí mismos son bastante lúcidos para ser entendidos en un

único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *SLG Francis-Acevedo v. SIMED*, 176 DPR, a la pág. 387. En ausencia de ambigüedad, las cláusulas del contrato son obligatorias, pues no se admitirá una interpretación que vulnere el claro propósito y la voluntad de las partes. *Íd.*

C

El Código Civil de Puerto Rico dispone en su Artículo 1536 que la persona que por culpa o negligencia causa daño a otra viene obligada a repararlo. 31 LPRA sec. 10801. Por tanto, en nuestro ordenamiento jurídico los actos y las omisiones en los que intervenga cualquier género de culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual.

Ahora bien, para que prospere una causa de acción por daños y perjuicios, el Tribunal Supremo de Puerto Rico ha establecido que es necesario probar la ocurrencia de una acción u omisión culposa o negligente que ocasiona un daño, y la existencia del nexo causal entre ambos. *Cruz Flores et al. v. Hosp. Ryder Memorial et al.,* 210 DPR 465, 484 (2022); *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 177-178 (2008).

En lo pertinente a la causa de acción ante nuestra consideración, los tribunales estamos llamados a evaluar si entre el acto culposo o negligente existe un **nexo causal adecuado**. *Cruz Flores et al. v. Hosp. Ryder Memorial et al.,* 210 DPR a la pág. 484. En cuanto a la doctrina de causalidad adecuada, el Tribunal Supremo ha reiterado que para que surja el elemento del nexo causal debe existir una relación ente el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al autor demandado. *Íd.*, a la pág. 485. Es esa relación directa la que permite concluir que el acto imputado es la causa adecuada del daño reclamado. *Íd.*

III

En síntesis, la parte apelante señala que el Tribunal de Primera Instancia erró en su interpretación de la póliza de seguros y al concluir que la aseguradora no le creó una expectativa de cubierta, sino que le apercibió sobre su reserva de derechos.

Arguye que el contrato de seguros suscrito se trataba de un contrato de adhesión y, si bien este debía interpretarse conforme a las reglas generales de interpretación contractual, en este caso la cláusula objeto de controversia resultaba ambigua y, por tanto, se debía interpretar conforme provee el Código de Seguros y el Código Civil contra la parte que lo redactó.

En cuanto al segundo señalamiento, sostiene que, en atención al tipo de reclamo en daños plasmado en su demanda, resultaba indispensable considerar la doctrina de la expectativa razonable o de las falsas expectativas desarrollada en diferentes jurisdicciones de Estados Unidos. Lo anterior, con el fin de aseverar que un asegurado que actúa amparado en la creencia razonablemente formada a partir de las expresiones de su aseguradora no puede ser perjudicado cuando dicha expectativa –inducida por la propia aseguradora– resulta, en última instancia, ser falsa.

A su vez, reitera que los daños causados fueron consecuencia de una larga cadena de falta de orientación, expresiones contrarias a una denegatoria de cubierta y falta de claridad. En particular, se refiere a los mensajes del 9 y 16 de mayo de 2023[9], e insiste en que la aseguradora, contrario a lo resuelto por el foro primario, no hizo reserva alguna y le indujo a concluir que aceptaba la representación legal sugerida.

Por su parte, Anglo PR y Antilles arguyen que ninguno de los errores alegados por la apelante se refiere a determinaciones de hechos o conclusiones de derecho sobre las partes comparecientes. Adujeron que de la póliza expedida por Chubb a favor de la FPF se desprendía la obligación inequívoca que tenia la apelante de esperar por una

---

[9] *Véase*, entrada 137 SUMAC TPI, anejos 1 y 2.

determinación de cubierta expresa y por escrito para poder reclamarle a su aseguradora el reembolso de dicho gasto.

En su alegato Chubb, discutió los errores señalados por la FPF de manera conjunta. En lo pertinente, arguyó que la FPF obvió por completo las alegaciones de su demanda; que son las que rigen su causa de acción. Así también, sostuvo que la FPF obvió por completo las determinaciones de hechos del foro primario y recurrió a reescribir hechos y a presentar hechos nuevos, que no habían sido debida ni oportunamente presentados ante el Tribunal de Primera Instancia en la moción de sentencia sumaria de la FPF, ni en su réplica. Resaltó que la FPF pretendió someter prueba nueva que nunca fue sometida a, ni considerada por, el tribunal al emitir la sentencia. En virtud de lo anterior, sostuvo que este foro no podía considerar los anejos 1 y 2 del recurso de apelación.

De otra parte, resaltó que la norma reiterada por el Tribunal Supremo de Puerto Rico es que la acción por daños contractuales solo procede cuando el daño sufrido surge como consecuencia del incumplimiento de una obligación específicamente pactada, es decir un daño que no ocurriría sin la existencia del contrato. Ello, con el fin de ilustrar que en este caso la apelante no pudo demostrar que los daños causados fueran consecuencia del incumplimiento de Chubb en notificar la denegatoria de la cubierta.

A su vez, Anglo PR sostuvo que no era parte en la relación contractual entre la FPF y la aseguradora, sino que meramente fungió como agente general de seguros en la relación entre Chubb y la FPF. Asimismo, afirmó que Antilles nada tuvo que ver en la relación contractual ni con los hechos alegados en el caso.

En cuanto al segundo error señalado, sostiene que no está relacionado a ninguna actuación de su parte e insiste en que la FPF sabía, o debía saber, que la cubierta de una póliza de seguro no se presume y que no existe un derecho absoluto a una cubierta de seguro, sino que está sujeto a los términos pactados entre las partes en el contrato. Finalmente, reiteró lo resuelto por el Tribunal de Primera instancia respecto a que la

FPF no logró establecer el nexo causal entre los daños reclamados y las acciones u omisiones de los apelados.

Como discutimos, para que prospere una acción por daños y perjuicios, la parte reclamante debe probar la ocurrencia de una acción u omisión culposa o negligente, la existencia de un daño y la presencia de un nexo causal entre ambos. En particular, debe probarse que el daño alegado es una consecuencia razonable del acto u omisión imputada.

En esta ocasión, si bien mediante la *Sentencia Parcial* del 4 de abril de 2025, el Tribunal de Primera Instancia determinó que medió un incumplimiento en cuanto a la notificación de la denegatoria de cubierta de la póliza de seguro, ciertamente la FPF no logró demostrar que el referido incumplimiento fuera la causa directa de los daños alegados en su demanda.

Examinada la segunda moción de sentencia sumaria presentada por la FPF ante el foro primario y el escrito de apelación presentado ante este foro, resulta claro que la alegación principal de la parte apelante se reduce a que Chubb le generó una falsa expectativa de que la solicitud de cubierta sería aceptada. Insiste en que fue a partir del intercambio informal e inicial entre ellos que la FPF determinó contratar a Adsuar y defenderse en el pleito federal en su contra, y no fue sino hasta 9 meses después cuando fue notificada de la denegatoria de cubierta, lo cual le impidió auscultar opciones menos onerosas para poder defenderse.

Examinadas las comunicaciones aludidas, así como la sección pertinente de la póliza, discrepamos de la conclusión de la parte apelante. Como señalamos, cuando los términos, las condiciones y las exclusiones de un contrato de seguro son claros, específicos y libres de ambigüedades, se hará valer la clara voluntad de los contratantes.

En primer lugar, de la póliza expedida y suscrita por la FPF surge claramente que la aseguradora no se haría cargo de los costos por defensa sin que hubiera expresado su consentimiento a ello previamente[10]. En

---

[10] La Sección 7 de la póliza dispone, en cuanto a *defensa y transacciones*, lo siguiente:

segundo lugar, si bien en el correo al que alude la parte apelante se le informó que no habría objeción respecto a la representación legal propuesta por la FPF, también es cierto que Chubb expresó en el mismo correo electrónico que ello quedaba sujeto a la determinación final de cubierta y de las tarifas de defensa[11]. Ciertamente de la prueba presentada no surge una obligación de pago por parte de Chubb de los gastos legales pagados a Adsuar.

De igual forma, concluimos que la FPF no estableció cómo, ni porqué, esos gastos legales constituyen un daño causado por el incumplimiento de la obligación de notificar la denegatoria de cobertura dentro del término de 90 días. Coincidimos con el foro primario respecto a que la FPF no cumplió con su carga probatoria para demostrar la ocurrencia de una acción u omisión culposa o negligente imputable a las partes apeladas del título que ocasionara un daño, ni logró establecer el nexo causal requerido.

---

7. Defense and Settlement:

Subject to this Subsection 7**, it shall be the duty of the Insureds and not the duty of the Insurer to defend any Claim**. As a condition precedent to any obligation on behalf of the Insurer under this Policy, the Insureds agree not to settle or offer to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Insurer's written consent. **The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation or admission <u>to which it has not consented.</u>** The Insureds shall promptly send to the Insurer all settlement demands or offers received by the Insureds from the claimant(s). However, if the Insureds are able to settle all Claims which are subject to a single Retention for an aggregate amount, including Defense Costs, not exceeding such Retention, the Insurer's consent shall not be required for the settlement of such Claims.

Entrada 94 de SUMAC TPI, Anejo A, a la pág. 9. (Énfasis nuestro).

[11] En el mensaje fechado el 16 de mayo de 2023, se expresaba lo siguiente:

**No tenemos objeción a la firma** [Adsuar] **recomendada por el Asegurado.** Ahora bien, nos encontramos en el proceso de evaluación de cubierta **y nos reservamos los derechos sobre la determinación de cubierta y tarifas de defensa.** Debido la complejidad de esta demanda en el foro federal, la evaluación de cubierta se está llevando a cabo con detenimiento y profundidad. Tan pronto tengamos la carta de determinación de cubierta se la haremos llegar.

Entrada 137 SUMAC TPI, anejo 2. (Énfasis nuestro).

IV

Por los fundamentos expuestos, **confirmamos** la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 20 de febrero de 2026.

Notifíquese.

Lo acordó y ordena el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones